## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**ROGER LEE JACKSON**                                          **PETITIONER**

**V.**                                        **CIVIL ACTION NO. 3:19-cv-409-TSL-LGI**

**MARSHALL TURNER**                                          **RESPONDENT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Roger Lee Jackson seeks federal habeas relief under 28 U.S.C. § 2254. After a review of the entire record and all the applicable law, the undersigned recommends that his petition be dismissed with prejudice.

#### Factual and Procedural Background

In 2017, a jury found Jackson guilty of aggravated assault and felon in possession of a firearm. He was sentenced as habitual offender to life without parole in the custody of the Mississippi Department of Corrections (MDOC). The relevant facts are accurately described in the state court's opinion and are incorporated herein.

In the early morning hours on November 11, 2014, two men were shot near Roach Street in Jackson, Mississippi. One of the victims, Quincy McGowan, died. His body was discovered in a nearby vacant lot by a passerby shortly after noon on November 11. Police found ten 9 mm shell casings near the body, and a 9 mm projectile was recovered from McGowan's body during autopsy.

The other victim, Emmanuel Jones, survived after being shot five times–once in the face, three times in the torso, and once in the foot. Doctors retrieved a .22 caliber projectile from Jones's body during treatment at a nearby hospital.

Jones testified at Jackson's trial. According to Jones, he and Jackson were riding around in Jackson's vehicle looking to buy drugs on the night of the shooting. At some point, Jones and Jackson encountered Jerry Lewis.  Lewis was driving another vehicle, with two males riding as passengers. Jones and Jackson followed Lewis to the vicinity of Roach Street and Farish Street, where they parked the vehicles in a vacant lot.

Jackson and Lewis got out of their vehicles and started talking. The two then began to argue. Jones said he heard Jackson tell one of the other individuals riding with Lewis to get out of the vehicle. Jones said he heard a gunshot, and he saw Jackson shoot McGowan. Jackson then came back to his vehicle and walked over to the passenger side where Jones was sitting, and began shooting Jones. Jones got out of the vehicle and ran to a nearby house, banged on the door, and collapsed on the porch. The home's occupant called 911. A couple of weeks after the shooting, Jones identified Jackson from a photo lineup as the person who had shot him.

Jones told the jury he believed Jackson had shot him (Jones) because Jackson did not want any witnesses.  On cross-examination, Jones admitted he was a convicted felon and was on probation at the time of the shooting. Jones said he was not allowed to own or possess a firearm. Jones said he did not own a gun, and was not in possession of one at the time of the shootings.

Jones's sister, Jerminda Myers, testified on behalf of the State. Myers said, soon after the shooting, she talked to Jones at the hospital about what had happened. Myers, who had once dated Jackson, said she had received a phone call from Jackson shortly after she talked to Jones at the hospital. Jackson said he heard Jones had been shot. According to Myers, Jackson was questioning her about Jones's condition and trying to find out if Jones was able to talk. Myers said she "played along" and told Jackson that Jones "was in critical condition." Myers said "it wasn't true." Jones was not in critical condition, and that Jones had already told her who shot him. Myers said when Jackson said to her, "Ain't no telling who did it[,]" she "almost bit [her tongue] off."

Myers said she received another phone call from Jackson a day later, asking if she still lived in the same apartment. Jackson also asked if Myers's mother still lived in the same location. Myers said she responded to Jackson: "I asked him did his mom stay in the same spot she lived in."

Detective Rozerrio Camel of the Jackson Police Department testified on behalf of the State and the defense. Detective Camel investigated the scene where McGowan's body was found on November 11. Detective Camel said Jackson developed as a suspect in the case during his investigation. Detective Camel also said he received a telephone call from an individual named Michael Davis, saying he had some information concerning the death of McGowan.

Davis testified at trial that McGowan was his best friend, whom he had known since the fourth grade. When Davis learned McGowan had been killed, Davis began asking around trying to find out who had killed him. Davis said when he spoke to

Jackson, Jackson had admitted killing McGowan. According to Davis, Jackson stated:
"Okay. I did it. Now what are you going to do?"

Davis thereafter spoke to Detective Camel and told him that Jackson had admitted
to killing McGowan. Detective Camel showed Davis a photograph lineup, from which
Davis identified Jackson. Davis also identified Jackson in the courtroom as the person
who had told Davis that he had killed McGowan. On cross-examination, Davis testified
that he had a subsequent conversation with Jackson in which Jackson said that Lewis also
was involved, along with someone named "Tope."

During the defense's case-in-chief, the defense called two witnesses: Detective
Camel and Tommy Bishop, a firearms examiner at the Mississippi Crime Laboratory.
Jackson did not testify.

The defense first asked Detective Camel about items that were found at the crime
scene and what, if any, forensic tests were conducted on those items. Detective Camel
said he had turned over all the items recovered to the Mississippi Crime Lab. The defense
also asked Detective Camel whether any DNA samples were collected from Jones, or
from anyone else in connection with the shootings. Detective Camel said no DNA
samples were collected from anyone.

Lastly, the defense asked Detective Camel whether he had interviewed Lewis
during his investigation. Detective Camel said he had interviewed Lewis, and that Lewis
was considered a potential suspect. But according to Detective Camel, they did not have
enough evidence linking him to the shooting(s). Detective Camel said "nobody came to
me and told me that they saw [Lewis] shoot [anyone]." When the defense asked

4

Detective Camel whether Lewis was dismissed as a potential suspect, Detective Camel said: "I never did dismiss him. I just didn't have enough to make an arrest. Like I said, I did interview him."

Bishop testified that he had examined one of the bullet projectiles recovered from Jones's body. Bishop said he was positive it was "a .22–caliber[,]" and not a "nine-millimeter." Based on a question asked by the defense, Bishop said the report he received in the case listed two suspects, "Roger Jackson and Jerry Lewis."

Based on the evidence presented at trial, Jackson was convicted of counts two and three of the indictment, aggravated assault and being a felon in possession of a firearm. He was acquitted of murdering McGowan, however, which was charged in the same indictment.

## Discussion

Aggrieved, Jackson appealed and asserted that the trial court erred in limiting his cross examinations of state witnesses and in limiting closing argument.  Finding no reversible error, the Mississippi Supreme Court affirmed Jackson's convictions and sentence. *Jackson v. State*, 245 So. 3d 433, 435–37 (Miss. 2018).  Jackson now brings the instant petition and asserts as grounds for relief the same issues that were raised and rejected on direct appeal.

## Ground One

In ground one, Jackson claims that his ability to present evidence in support of his defense strategy—that Lewis, not he, shot *both* victims—was impeded by the trial court's limitation of his cross examinations at trial.  The record reflects, however, that Jackson's

cross-examination claims were deemed procedurally barred on direct appeal because they were not contemporaneously made or otherwise preserved for appellate review.  Jackson must overcome this procedural default to obtain federal review.

As noted, Jackson claims, as he did on direct appeal, that the trial court erroneously limited his cross examination of three witnesses:  Jones, Davis, and Detective Camel.  During Jones's cross-examination, the defense asked Jones if he told police that Lewis said, "that m*****f***** had something to do with [my] residence being shot up," prior to the shooting.  Jones responded that he had, but the answer was stricken from the record when counsel could offer no response to the State's hearsay objection.  On direct appeal, Jackson asserted for the first time that the question was intended to establish that Lewis was angry prior to the shooting, and thus had a motive to shoot McGowan *and* Jones, presumably because he witnessed McGowan's shooting. The Mississippi Supreme Court ruled that the argument was procedurally barred because it had not been presented to the trial court and because it had "repeatedly held that a trial court cannot be put in error for something upon which it had no opportunity to pass." *Jackson*, 345 So. 3d 433, 440 (citing *Patterson v. State*, 594 So. 2d 606, 609 (Miss. 1992).

Jackson's arguments regarding Detective Camel and Davis were deemed waived as well.  Through Detective Camel, Jackson sought to imply from police reports that Jones wasn't certain that Jackson was the shooter; that Lewis may have been the shooter; and, that Jackson may have even been shot unintentionally.  The State objected that defense counsel was attempting to mislead the jury, but counsel countered that he was

merely asking about the investigation and that any out-of-court statements obtained as a result thereof were admissible under state law.  On direct appeal, the Mississippi Supreme Court noted that, while Jackson was correct that "out-of-court statements were admissible to show why an officer acted as he did or was at a particular place at a particular time," counsel's line of questioning "clearly assert[ed] factual statements as true, but without a showing to the trial court and the record as to whether a good-faith basis exists for the assertion." *Jackson*, 245 So. 3d at 441-42 (citation omitted and internal quotation marks omitted).  Because "no proffer was made by the defense as to the police reports or as to Detective Camel's testimony with regard to the police reports," the point had not been properly preserved for appeal.

As to Davis, the third and final witness, the record reflects that Jackson sought to introduce an audio recording of Davis's police interview in which he reportedly stated that Jackson told him that Lewis and a third person were involved in the shootings. Defense counsel asserted that the audio recording was admissible for impeachment purposes, but the trial court sustained the State's objection that it was merely self-serving hearsay.  In addressing the assignment of error on appeal, the Mississippi Supreme Court noted that the defense had failed to argue, as it did on appeal, that the recording was admissible under Mississippi's Rule of Evidence 106, which provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—

that in fairness ought to be considered at the same time." Counsel had also failed to request a proffer of the audio recording on that basis. Accordingly, as with Jones and with Detective Camel, this argument was ruled procedurally barred.

For purposes of federal review, it is well settled that a "federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Guidry v. Lumpkin*, 2 F.4th 472, 486 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1212 (2022) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017)). Under the procedural default doctrine, "[t]he twin requirements of independence and adequacy demand that the state court's dismissal must 'clearly and expressly' indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims." *Id.* The Fifth Circuit has long considered Mississippi's contemporaneous objection rule an adequate state procedural bar because Mississippi courts have strictly and regularly imposed the bar for failing to raise issues at trial. *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992); *see also Day v. King*, No. 103CV624DMRJMR, 2006 WL 2541600, at *4 (S.D. Miss. Aug. 31, 2006) (listing Mississippi cases which hold issues procedurally barred for failure to lodge a contemporaneous objection or for failure to present the issue to the trial court.)

Jackson can save his procedurally defaulted claims from being dismissed if he can demonstrate both cause for the default and actual prejudice resulting from it, or that a "fundamental miscarriage of justice" will occur if his claims are not considered. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 566 U.S.

1 (2012).  To establish cause, "there must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753.  To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different.  *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Jackson makes no attempt to show that either exception is met here.

Similarly, Jackson does not show that, as a factual matter, he is actually innocent of the crimes for which he was convicted and that he would suffer a fundamental miscarriage of justice if the defaulted claims were not considered.  The "fundamental miscarriage of justice" exception is triggered only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986).  It requires that the petitioner support such an allegation with *new,* reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).  Jackson has presented no new evidence here.  Accordingly, he has failed to overcome his procedural default and his claims in ground one are barred from federal review.

### Ground Two

Grounds Two was adjudicated on the merits on direct appeal.  The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2244(d), precludes this Court from granting Jackson federal habeas corpus relief on claims adjudicated on the merits unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This court reviews questions of law as well as mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1) of the AEDPA, while questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of" are independent bases for granting federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision is "contrary to" federal law if it contradicts Supreme Court precedent or reaches a different result on materially indistinguishable facts. *Id.* "[C]learly established Federal law includes only the holdings of the Court's decisions," *White v. Woodall*, 572 U.S. 415, 419, 134 S. Ct. 1697, 188 L. Ed. 2d 698 (2014) (internal citation and quotation marks omitted). Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Wood v. Allen*, 558 U.S. 290, 301, 130 S. Ct. 841, 175 L. Ed. 2d 738 (2010).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morales v. Thaler*, 714 F.3d 295, 301 (5th Cir. 2013). Deference is critical because federal courts

have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002); *Jasper v. Thaler*, 466 F. App'x 429, 435 (5th Cir. 2012). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254 (e)(1).

As noted *supra*, Jackson contends in ground two that he is entitled to habeas relief because the trial court erred in limiting defense counsel's closing arguments. Counsel had argued to the jury that it was not enough to believe that Jackson "probably" or "likely" committed the crime; rather, they were required to find that he did so beyond a reasonable doubt. The State objected, however, that counsel was improperly defining reasonable doubt. The trial court agreed and sustained the objection.

On direct appeal, Jackson asserted, as he did at trial, that the argument was not improper. The Mississippi Supreme Court agreed, but found the error was harmless:

> This Court has held that "a definition of reasonable doubt is not a proper instruction for the jury[,]" because "reasonable doubt defines itself and needs no further definition by the court." *Martin v. State*, 854 So. 2d 1004, 1009 (Miss. 2003); *Chase v. State*, 645 So. 2d 829, 851 (Miss. 1994). "The meaning of these words is not obscure and it must be assumed that the members of the jury were . . . of ordinary intelligence and capable of understanding their meaning." *Cannon v. State*, 190 So. 2d 848, 851 (Miss. 1966).

> Jackson also is correct, however, that this Court has not held it improper for counsel (either for the defense or the prosecution) to discuss or explain the reasonable-doubt standard during closing arguments, as long as counsel does so within proper bounds.

11

> Here, we find that defense counsel's comparison of "probably committed the crime" and "likely committed the crime" to the reasonable-doubt standard did not cross those bounds. And the trial court erred in sustaining the State's objection to it.
>
> But we also find the error was harmless in this instance, beyond a reasonable doubt. Accordingly, we reject Jackson's contention that the error requires reversal of his convictions.

*Jackson*, 245 So. 3d at 444.

For purposes of federal review, a petitioner must show the trial court's error resulted in prejudice of a constitutional magnitude—that it had a "substantial and injurious effect or influence on the jury's verdict." *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)).  Jackson cannot make this showing here.  As Respondent notes, the trial court sustained the prosecution's objection, but it did not instruct the jury to disregard counsel's comments regarding reasonable doubt.  In fact, the record reflects that counsel continued with his argument as before.  That Jackson was acquitted of murdering McGowan in the end, not only undermines his claim that he was prejudiced by the trial court's ruling in ground two, but it also casts doubt on his claims in ground one, i.e., that the limitations on his cross-examinations impeded his ability to shift blame to another shooter. Notwithstanding his acquittal on ground one, overwhelming evidence as described herein was sufficient for the jury to find Jackson guilty beyond a reasonable doubt of shooting Jones.  The state court's decision that the trial court's error did not warrant reversal of Jackson's convictions is neither contrary to, nor an unreasonable application of clearly established federal law.

For the reasons discussed herein, it is the recommendation of the undersigned United States Magistrate Judge that this habeas petition should be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi*, any party may serve and file written objections within 14 days after being served with a copy of this Report and Recommendation.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on June 17, 2022.

s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE